**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3736-16T2

RIVERMOUNT DEVELOPMENT
LLC,

     Plaintiff-Appellant,

v.

RICHARD B. LIVINGSTON, ESQ.,
and LAW OFFICES OF RICHARD
B. LIVINGSTON,

     Defendants,

and

BRIAN D. SCHOTTENHEIMER and
GEMMI A. SCHOTTENHEIMER,

     Defendants-Respondents.

_____

Argued October 4, 2018 – Decided August 14, 2019

Before Judges O'Connor and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1215-14.

Gary D. Grant argued the cause for appellant (Grant Law Group, LLC, attorneys; Gary D. Grant and Janet S. Del Gaizo, on the brief).

Eric B. Levin argued the cause for respondents (Lindabury, McCormick, Estabrook and Cooper, PC, attorneys; Eric B. Levine and Sergio D. Simões, of counsel and on the brief).

PER CURIAM

This dispute arises from a contract to purchase real estate. Plaintiff Rivermount Development, LLC (Rivermount) appeals from three orders of the Law Division granting summary judgment to defendants Brian D. Schottenheimer and Gemmi A. Schottenheimer and the February 15, 2017 order denying plaintiff's motion for reconsideration. We affirm.

## I.

The following facts were derived from the record and viewed "in the light most favorable to the non-moving party." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (citing R. 4:46-2(c)). The Schottenheimers decided to move to New Jersey because Brian's[1] employer relocated to the State. In February 2008, they executed a contract for the purchase of a single-family home being constructed by Rivermount, a sophisticated real estate developer, in Morris

---

[1] Because defendants share a last name, we use their first names for clarity.

County. The contract contained an unequivocal clause making the Schottenheimers' purchase of the home contingent on the sale of their residence in New York. As consideration for the home sale contingency clause, the Schottenheimers agreed to pay for all modifications and upgrades Rivermount made to the home at their request and to forfeit those payments in the event they terminated the contract.

The contract also specified a closing date of June 1, 2008. The Schottenheimers negotiated that date based on Brian's need to be in New Jersey at that time for his job. In addition, the couple wanted sufficient time to settle into their new home before the start of the new academic year.

The record contains undisputed evidence that the Schottenheimers listed their New York home for sale. They hired a real estate broker to market the property. The broker arranged for several open houses. Having not sold the home, the Schottenheimers reduced the listing price twice. As of May 19, 2008, the New York property had not sold. As a result, the Schottenheimers exercised their right to terminate the contract under the home sale contingency clause and demanded a return of their deposit. They acknowledged they forfeited $16,000 they paid for customizations Rivermount made to the home at their request.

A-3736-16T2

Although the Schottenheimers exercised the home sale contingency clause twelve days before the scheduled closing date, the record demonstrates that Rivermount would not have been ready to close title on June 1, 2008. Rivermount had not yet completed construction of the home, secured a certificate of occupancy, or obtained a home warranty. After receiving the Schottenheimers' letter terminating the contract, Rivermount's counsel stated in writing to the Schottenheimers' counsel that Rivermount did not expect the house to be complete until mid-July, and inquired into whether they would be interested in extending the closing date in order to have more time to sell the New York home. The Schottenheimers declined that offer. In addition, on or about June 1, 2008, two real estate investors to whom Rivermount owed substantial sums of money filed a lis pendens on the property.

On May 23, 2008, the Schottenheimers visited another property listed for sale in Morris County. On July 17, 2008, they purchased that home, paying more for that property then they had agreed to pay for the Rivermount house. The purchase contract did not contain a home sale contingency clause. Brian's employer provided significant financial assistance in purchasing the home. This allowed the Schottenheimers to continue to pay the mortgage on their New York property until it was sold nearly a year later.

A-3736-16T2

On June 16, 2009, Rivermount sold the property for less than the purchase price in the Schottenheimer contract. On May 13, 2014, almost six years after the Schottenheimers exercised their rights under the home sale contingency clause, Rivermount filed a complaint against them and its prior counsel in the Law Division. Rivermount alleged that its prior counsel was instructed to remove the home sale contingency clause from the contract but failed to do so. In addition, Rivermount alleged the Schottenheimers waived the home sale contingency clause in conversations with Rivermount's counsel, real estate brokers, and principals of Rivermount after execution of the contract, and that Brian made misrepresentations to a principal of Rivermount when he stated that he was unconcerned about the sale of the New York property and that his employer would provide any financial assistance needed to facilitate the Schottenheimers' move to New Jersey. Rivermount alleged professional malpractice claims against its former counsel, and alleged that the Schottenheimers violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -210, and breached the sales contract. Rivermount also sought relief from the Schottenheimers under quantum meruit.

On February 20, 2015, the trial court entered an order dismissing the allegations against the Schottenheimers and granting Rivermount leave to file

an amended complaint. On March 3, 2015, Rivermount filed an amended complaint reiterating the factual allegations in the original complaint. The amended complaint restated its allegations of professional malpractice against its prior counsel. In addition, Rivermount alleged the Schottenheimers breached the implied covenant of good faith and fair dealing in the sales contract, committed common law fraud, and are subject to equitable estoppel. Rivermount alleged Brian falsely stated he was invoking the home sale contingency clause because he could not afford to pay two mortgages, but was planning to purchase another house without first selling his New York property.

On November 3, 2016, the court entered an order granting summary judgment to the Schottenheimers on all claims in the amended complaint. The court issued an oral opinion relying on the unequivocal language of the home sale contingency clause. As the court explained,

> I don't think it's up to the buyers to provide any reason why they couldn't take title.
>
> . . . .
>
> And I agree, there's nothing to show that the defendants Schottenheimer were able to sell the [New York] property . . . . And there's no proof to show that their inability to sell it was in any way due to any type of bad faith on their part.

I think the long and short of it is that there was ample reason for the buyers to terminate and they, for that reason, exercised their right to terminate.

. . . .

Anything they may have said after they did exercise that right really has no bearing on the case whatsoever.

I think neither does it have any bearing on whether they did a few days later buy a different house, no matter what the price.

But certainly any representations or statements made after termination didn't amount to any type of fraud or common law fraud which could have, which any way affected their rights which had already . . . previously been negotiated, and previously been exercised.

Nor can I see any bad faith in what simply was their exercise of a contractual right that they had. So that there would not be any violation of any good faith and fair dealing.

And I certainly, because of this, can't see any reason for equitable estoppel so that I will grant the motion in favor of the Schottenheimers.

On November 17, 2016, the court entered an amended order granting summary judgment in favor of the Schottenheimers and noting that all claims against them were dismissed with prejudice.

On February 15, 2017, the court entered an order denying Rivermount's motion for reconsideration. The court rejected the argument that it misapplied

7

the holding in <u>Sons of Thunder, Inc. v. Borden, Inc.</u>, 148 N.J. 396, 420 (1997),

when deciding the summary judgment motion. The court explained:

> In [my] reading [of the] <u>Sons of Thunder</u> case it did point out that where a contractual right to terminate is expressed and unambiguous then the motive of the terminating party is irrelevant. And, certainly, the home sale clause in this particular contract, which was actually an added on rider, was, I think as clear and as unambiguous as you can be. It gave the Schottenheimers a right to terminate if they did fail to sell the [New York] property. And when it was terminated they hadn't been able to sell it, plain and simply [sic].
>
> So that any of their other motives really are irrelevant. I certainly don't find that my [grant] of the summary judgment was at all palpably unreasonable or incorrect. So I will deny the motion.

Rivermount thereafter stipulated to the dismissal of its claims against its prior attorney. This appeal followed.[2]

---

[2] The Schottenheimers argue that Rivermount's appeal should be limited to the February 15, 2017 order because that is the only order listed in its notice of appeal. Normally, we do not consider judgments or orders not identified in the notice of appeal. <u>See</u> <u>R.</u> 2:5-1(e)(3)(i) (stating that a notice of appeal "shall designate the judgment, decision, action or rule, or part thereof appealed from"); <u>Fusco v. Bd. of Educ.</u>, 349 N.J. Super. 455, 461-62 (App. Div. 2002) (stating that appellate review pertains only to judgments or orders specified in the notice of appeal). However, Rivermount's accompanying case information statement and an attachment thereto identifies the February 20, 2015, November 3, 2016 and November 17, 2016 orders as being appealed. We will, therefore, consider its appeal from those orders. There is no merit to the Schottenheimers' argument

A-3736-16T2

We review the trial court's decision granting summary judgment de novo, using "the same standard that governs trial courts in reviewing summary judgment orders." Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998). Rule 4:46-2(c) provides that a court should grant summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." "Thus, the movant must show that there does not exist a 'genuine issue' as to a material fact and not simply one 'of an insubstantial nature'; a non-movant will be unsuccessful 'merely by pointing to any fact in dispute.'" Prudential, 307 N.J. Super. at 167 (quoting Brill v. Guardian Life Ins. Co., 142 N.J. 520, 529-30 (1995)). Our review is "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment." Brill, 142 N.J. at 523-24.

After carefully reviewing Rivermount's arguments in light of the record and applicable legal principles, we affirm the November 3, 2016 and November

that it is improper to appeal four orders in one appeal. To the contrary, an appellant may not file separate notices of appeal for each order for which review is sought. In re Unanue, 311 N.J. Super. 589, 598 (App. Div. 1998).

17, 2016 orders granting summary judgment to the Schottenheimers, for the reasons stated by the trial court in its oral opinion. We add these comments.

"[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing." Sons of Thunder, 148 N.J. at 420. "The party claiming a breach of the covenant of good faith and fair dealing 'must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties.'" Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 225 (2005) (quoting 23 Willison on Contracts § 63:22, at 513-14 (footnotes omitted)). However, "the implied covenant of good faith and fair dealing cannot override an express termination clause[,]" Sons of Thunder, 148 N.J. at 419, and "where the contractual right to terminate is express and unambiguous, the motive of the terminating party is irrelevant." Id. at 423.

The record clearly establishes that Rivermount agreed to a contract with the Schottenheimers that contained an unequivocal house sale contingency clause. The clause does not predicate the Schottenheimers' right to terminate the contract on a financial inability to purchase the Rivermount house. It does not obligate the Schottenheimers to seek financial assistance from Brian's

employer to purchase the home. The Schottenheimers do not have a contractual obligation to refrain from purchasing a different home after termination of the contract. The Schottenheimers had a contractual right to terminate the contract if they were unable to sell their home after making a good faith effort to do so. Rivermount does not dispute the trial court's finding that the Schottenheimers made a good faith effort to sell their home before exercising their rights under clause.

It belies credulity for a sophisticated real estate developer to argue it believed the home sale contingency clause had no force because Brian allegedly stated either before or after execution of the contract that he was unconcerned about the sale of the New York home and could buy the Rivermount property with the assistance of his employer if necessary. A claim that the developer relied to its detriment on oral statements by Brian after execution of the contract that were impliedly contrary to the express terms of the home sales contingency clause is similarly incredible.

With respect to the February 15, 2017 order, Rule 4:49-2 provides:

> Except as otherwise provided by R. 1:13-1 (clerical errors) a motion for rehearing or reconsideration seeking to alter or amend a judgment or order shall . . . state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has

A-3736-16T2

overlooked or as to which it has erred, and shall have annexed thereto a copy of the judgment or order sought to be reconsidered and a copy of the court's corresponding written opinion, if any.

"A motion for reconsideration . . . is a matter left to the trial court's sound discretion." Lee v. Brown, 232 N.J. 114, 126 (2018) (quoting Guido v. Duane Morris, LLP, 202 N.J. 79, 87 (2010)); see also Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). A party may move for reconsideration of a court's decision pursuant to Rule 4:49-2, on the grounds that (1) the court based its decision on "a palpably incorrect or irrational basis," (2) the court either failed to consider or "appreciate the significance of probative, competent evidence," or (3) the moving party is presenting "new or additional information . . . which it could not have provided on the first application." Id. at 384 (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401-02 (Ch. Div. 1990)).

The moving party must "initially demonstrate that the [c]ourt acted in an arbitrary, capricious, or unreasonable manner, before the [c]ourt should engage in the actual reconsideration process." D'Atria, 242 N.J. Super. at 401. A motion for reconsideration is not an opportunity to "expand the record and reargue a motion. [It] is designed to seek review of an order based on the evidence before the court on the initial motion, . . . not to serve as a vehicle to introduce new evidence in order to cure an inadequacy in the motion record."

12

Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008).

Our review of the record and applicable legal principles leads us to affirm the February 15, 2017 order denying reconsideration for the reasons stated by the trial court in its oral opinion. To the extent we have not specifically addressed any of Rivermount's remaining contentions, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).[3]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] Rivermount's brief does not address the February 20, 2015 order, although that order is listed in the attachment to its case information statement. We consider its appeal from that order waived. "[A]n issue not briefed is deemed waived." Pressler and Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2019); Telebright Corp. v. Dir., N.J. Div. of Taxation, 424 N.J. Super. 384, 393 (App. Div. 2012) (deeming a contention waived when the party failed to include any arguments supporting the contention in its brief).

A-3736-16T2