710 A.2d 1036 (1998)
311 N.J. Super. 589
In the Matter of the Settlement of the Accounts of Joseph UNANUE and Frank Unanue, Trustees under the Trust Agreement dated November 16, 1970, as Amended, by and among Prudencio Unanue, as Grantor, and Prudencio Unanue, Joseph Unanue and Anthony Unanue, as Trustees of Sixteen Trusts Thereunder.
Superior Court of New Jersey, Appellate Division.
Argued May 5, 1998.
Decided May 19, 1998.
Jan Alan Brody, Roseland, for appellant Charles Unanue in A-3915-94T3 (Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, attorneys; Mr. Brody and James E. Cecchi, on the brief).
Edward B. Deutsch, Morristown, for appellant Charles Unanue in A-4130-94T3 (McElroy, Deutsch & Mulvaney, attorneys; Mr. Deutsch, of counsel; Laura A. Sanom, on the brief).
Michael R. Griffinger, Newark and N. Patrick Quirk, Cresskill, for respondents (Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, for respondents Beneficiaries; Quirk & Gallagher, Cresskill, for respondents Trustees Joseph A. Unanue and Frank Unanue; Saiber, Schlesinger, Satz & Goldstein, Newark, for respondent Goya Foods, Inc.; Mr. Griffinger, Mr. Quirk and David M. Satz, Jr., on the joint brief).
Before Judges PRESSLER, WALLACE and CARCHMAN.
PER CURIAM.
By these appeals, which we consolidate for purposes of this opinion, defendant Charles Unanue challenges orders of the Chancery Division, Probate Part, approving the final accounting of the trustees of a trust established by Prudencio Unanue on November 16, 1970; rejecting defendant's claim to any interest in the assets of the trust or the assets of the estate of Prudencio Unanue, who died in 1976; validating an agreement made in 1972 between defendant and Goya Foods, Inc. and its affiliates and a 1974 amendment of that agreement by which defendant waived his interest in those assets; determining that defendant's breach of the 1974 agreement entitled plaintiffs to compensatory damages including attorney fees; and assessing damages against defendant in the amount of $6,890,820.07 together with a portion of the fee of the special master appointed to address the damages issue.
We affirm all the orders appealed from substantially for the reasons stated by Judge Kole and Judge Lesemann for reaching their respective determinations. We add only the following observations.
Because of the detailed factual recitations and findings contained in Judge Kole's exhaustive reported opinion, we need make only brief reference to the salient facts. The decedent and trust settlor, Prudencio Unanue, born in Spain, moved to Puerto Rico in 1904 to engage in various business ventures. He married his wife Carolina in Puerto Rico in 1921. Following his marriage, he came to the United States, where he had earlier studied, to earn his livelihood. Carolina and their first-born son, defendant Charles, joined him in Brooklyn, New York, shortly thereafter. Two more sons were born to the Unanues while they lived in Brooklyn, Joseph and Anthony. In 1929 the family moved to Ridgefield Park in New Jersey where the fourth son, Frank, was born. Five years later, the family moved to Bogota, New Jersey, and some years thereafter bought the *1038 house Prudencio had originally rented. The family lived in that house until 1962 when Prudencio and Carolina bought a new house in Tenafly, New Jersey. By that time all the sons, who had grown up and attended school in Bergen County and had completed their military service, had married and established their own homes. Prudencio was naturalized as an American citizen in 1946 and Carolina in 1956. It was not until 1949 or 1950 that either Prudencio or Carolina left New Jersey to visit Puerto Rico, and in the late 1950's, they had established the practice of spending the winter months in Puerto Rico.
By 1936, Prudencio, who had engaged in various business ventures in New York, established a sole proprietorship which ultimately became Goya Foods, Inc., and its various affiliates. The company was headquartered in New York City until 1974, when the business was moved to Secaucus, New Jersey. All the sons were engaged in the Goya operations, and by 1969, when he was dismissed from his positions following family business disputes, defendant was the chief operating and chief executive officer of all the companies.
In 1970 Prudencio completed his final estate plan by executing both an inter vivos trust and a will. He conveyed to the trust, whose beneficiaries were all his grandchildren, including the children of defendant, his principal asset, namely, his shares in Goya. His residuary estate "poured over" into the trust. In the meantime, the family disputes between defendant and his brothers and father, which had already been the subject of protracted litigation, were finally settled by the execution of a settlement agreement in 1972 and an amended agreement in 1974 between defendant and the Goya companies for the stated benefit not only of the businesses but also for the benefit of defendant's parents and brothers and their respective heirs and assigns. By these agreements, Charles, for a substantial consideration, sold his interest in the Goya companies back to the companies, agreed to the dismissal of all litigation, waived all his rights to the companies and his father's estate, and, by the 1974 amendment, covenanted
... for the benefit of the Companies, the Additional Companies, Charles' Brothers, Prudencio Unanue and their estates, heirs, beneficiaries, successors, legal representatives and assigns, that he irrevocably disclaims and renounces any and all interests he may have or may hereafter have in the assets or estate of Prudencio Unanue, whether under any will, trust, by intestacy, by virtue of relationship, by other operation of law, or otherwise, and that Charles will not at any time or in any way contest, challenge, interfere with, hinder, or seek to invalidate, set aside or impair, in whole or in part, in any court, tribunal, agency or any other governmental organ or forum (of any jurisdiction) or otherwise, any will, gift, trust, other testamentary or inter vivos disposition by operation of law or any other disposition of property of any kind of or by Prudencio Unanue, or institute, bring, prosecute or make any claim, suit, proceeding (including, without limitation, any proceeding to construe any testamentary or inter vivos instrument), cause of action or objection (including, without limitation, objection to the jurisdiction of any court) relating to any such will, gift, trust or other disposition or devolution. Charles understands and acknowledges that he is not a beneficiary or recipient of any property or interest under any present instrument relating to the disposition of the assets or estate of Prudencio Unanue and agrees to execute all documents and take any and all actions in any jurisdiction necessary or required effectively to waive or renounce any rights or claim he may have or may hereafter have with respect to any of the matters referred to in this Section 6.03 under any of the foregoing.
The 1974 agreement further provided that in the event of a suit or proceeding by a party to the agreement or by Prudencio, the losing party was obligated to pay as liquidated damages twice the costs and expenses of the litigation, including reasonable attorney fees.
Prudencio died in Puerto Rico in 1976. His will was probated in Bergen County. The trust continued, as theretofore, to be administered in Bergen County. Interim accountings were rendered in Bergen County. *1039 All went smoothly until 1987, when defendant claimed entitlement to an inheritance from his father and an interest in the Goya shares that had been placed in trust. This litigation ensued by the trustees who sought a declaration that defendant had no interest either in the trust or the estate.
The linchpin of defendant's claim is that Prudencio was a domiciliary of Puerto Rico both in 1970, when he executed the trust document, and in 1976, when he died. Defendant asserts that under Puerto Rican law, which therefore governed Prudencio's estate, he could not have been disinherited and hence that his waivers contained in the 1972 and 1974 agreements were void. He also argues that Puerto Rican law of conjugal partnership applied to the disposition of Prudencio's shares of Goya and hence that at least half of those shares remained vested in Carolina, through whose estate he, defendant, would take.
The domiciliary issue was tried over the course of 170 trial days by Judge Kole, whose detailed findings and conclusions are set forth in his opinion reported as Matter of Unanue, 255 N.J.Super. 362, 605 A.2d 279 (Law Div.1991). The voluminous record amply supports his findings on which he based his conclusion that Prudencio's domicile prior to 1970, in 1970, and in 1976 remained in New Jersey. There is no basis at all in this record for us to interfere with either his findings or conclusions. See, e.g., Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-484, 323 A.2d 495 (1974). We therefore affirm Judge Kole's decision.
The inevitable consequence of the domiciliary decision, as Judge Lesemann concluded in granting plaintiffs' summary judgmentmotion, is that New Jersey law applies to all questions arising out of the administration of Prudencio's trust and estate. It is well-settled that New Jersey law does not prohibit the disinheriting of an adult child. See, e.g., In re Estate of Campbell, 71 N.J.Super. 307, 310, 176 A.2d 840 (Cty.Ct. 1961).[2] There is, therefore, no legal basis upon which defendant can successfully argue that he is entitled to a share of Prudencio's estate or that the 1972 and 1974 agreements are invalid because his waiver of his inheritance rights was contrary to Puerto Rican law.
Defendant, however, also challenges the trust on the ground that under Puerto Rican law of conjugal partnership, Carolina had an interest in the shares of Goya that Prudencio owned and hence that Prudencio could not unilaterally dispose of them by transferring them to the trust. We agree with Judge Lesemann's disposition of this issue as well. Judge Kole's findings mandate the conclusion that at the time of Prudencio's acquisition of his shares of Goya Foods, Inc., as well as his ownership of its predecessor entities, he was domiciled in New Jersey, which recognizes neither community property nor conjugal partnerships. Defendant nevertheless argues that the law of the place of the marriage continues to control rights to spousal property ever afterwards and hence that any personal property acquired by Prudencio at any time and irrespective of domicile of the acquiring spouse was subject to Puerto Rican law of conjugal partnership. We disagree. As a matter of well-settled conflicts-of-law principles, it is clear that the law of the place of the domicile of the acquiring spouse at the time of the acquisition governs the determination of whether the acquired property is separate or community. See, e.g., United States v. ITT Consumer Financial Corp., 816 F.2d 487, 490-491 n.7 (9th Cir.1987).
Defendant also challenges the enforceability in this action of section 8.01 of the 1974 agreement which provided for payment by the losing party of double the litigation expenses in the event of "any suit, action or proceeding instituted by any signatory to this Agreement or the Collateral Covenants at the foot hereof or by Prudencio Unanue involving any other such signatory or Prudencio Unanue concerning any matter...." Judge Lesemann considered each ground of objection raised by defendant, and we concur *1040 with his disposition for the reasons stated by him in his oral opinion of March 28, 1994. In sum, Judge Lesemann concluded first that the contractual provision for payment of attorney fees was valid both under the law of New Jersey, the forum, and under the law of New York, which was specified for choice-of-law purposes in the agreement. That decision is unexceptionable. See, e.g., Instructional Systems v. CCC., 130 N.J. 324, 341, 614 A.2d 124 (1992) ("[o]rdinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy"); Satellite Gateway Com. v. Musi Dining Car Co., 110 N.J. 280, 285-286, 540 A.2d 1267 (1988) (holding that despite the constraints of the so-called American rule, an allowance of counsel fees may be made even if not authorized by rule or statute where the parties themselves have so agreed in advance by contract).
Next, while Judge Lesemann agreed with defendant that the double payment constituted an unenforceable penalty, he was satisfied that that proviso was severable from the provision that damages would include reasonable attorney fees. We agree both with his penalty decision and with his severability decision. It is plain that the protection against the incurring of litigation expenses by the successful litigant was at the heart of section 8.01, and it is also plain that the provision of that protection by agreement is perfectly lawful and enforceable. We also agree, for the reasons stated by Judge Lesemann, that the benefit of the attorney fees provision was intended to include all third-party beneficiaries of the agreement in addition to its signatories and Prudencio himself. And those third-party beneficiaries were, as repeatedly stipulated throughout the agreement, the signatories' and Prudencio's heirs and assigns.
Finally, defendant challenges Judge Lesemann's reference to a special master for the determination of the amount of counsel fees incurred by plaintiff. We are satisfied that the reference was in full accord with R. 4:41-1. It was approved by the Assignment Judge, initially consented to by all parties although defendant later attempted to withdraw his consent, and the circumstances were extraordinary in that the years of litigation instigated by defendant in a plethora of courts and jurisdictions resulted in massive documentation and explanation of the substantial fees incurred by plaintiffs. The sheer volume of the material rendered the issue particularly suitable to review and recommendation by a master. In any event, the master's report was duly submitted, and we affirm its acceptance by Judge Lesemann for the reasons stated by him on February 23, 1995.
All of the issues to which we have referred herein were raised by defendant in his appeal under Docket Number A-3915-94T3. We find without merit the remainder of his challenges raised in that appeal. R. 2:11-3(e)(1)(A) and (E).
We address now the single issue raised by defendant, through other counsel, in his appeal under Docket Number A-4130-94T3, namely, that the trial court erred in entering judgment against defendant individually and thereby deprived him of his right to procedural due process. At the outset, we doubt the procedural viability of this separate appeal. There is no reason why the issue could not and should not have been raised in the main appeal which was filed by defendant individually on his own behalf alone. A party is required to raise in a single appeal all of his challenges to the judgment appealed from. The appellate court has no greater tolerance for piecemeal litigation than do the trial courts, and the filing of separate appeals by the same party from the same final judgment is an obvious, untenable, and intolerable violation of the overriding policy of judicial administration that litigation be conducted expeditiously, economically, and efficiently. We have nevertheless considered the substance of the issue raised by this separate appeal, and we are persuaded that it is entirely without merit. Defendant's argument is based on the fact that during the course of the litigation, he was substituted for by the trustee in bankruptcy in his then pending bankruptcy action, of which he apparently had filed several. There was no formal order resubstituting *1041 defendant when that action was dismissed and the assets of the estate in bankruptcy revested in him. Nevertheless, defendant, as a pro se litigant, actively engaged in the defense of the action, seeking relief by way of cross-motions, and otherwise conducting himself as a full-fledged and knowledgeable litigant. He thereby submitted himself for all purposes to the jurisdiction of the court, sought its relief, and fully participated in all proceedings. His present claim that he was denied procedural due process by the trial court rests not on any substance but on the technical oversight of the failure of entry of an order resubstituting defendant for the trustee in bankruptcy. The fact remains that the conduct of the litigation proceeded from the mutual assumption of all parties and the court that that resubstitution was, in actuality, the case, as indeed it was. We think it plain that under these circumstances, defendant must be deemed to have waived the necessity of the formal order and that he must be estopped from seeking to obtain any litigation advantage from its omission.
The final judgment and all interlocutory orders appealed from in both appeals are affirmed.
NOTES
[2] We note that N.J.S.A. 3B:5-16 made no substantive change in former N.J.S.A. 3A:3-10 and -11, on which the Campbell court relied and which was the statute in effect at the time of Prudencio's death.