**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3604-15T1

DEPARTMENT OF COMMUNITY
AFFAIRS, SANDY RECOVERY
DIVISION,

    Petitioner-Respondent,

v.

ROBERT RUGGIERO,

    Respondent-Appellant.

_____

Argued July 11, 2017 — Decided November 8, 2017

Before Judges Nugent and Accurso.

On appeal from the Department of Community
Affairs, Docket Nos. RSP0015504 and
RRE0015496.

Michael Confusione argued the cause for
appellant (Hegge & Confusione, LLC,
attorneys; Mr. Confusione, of counsel and on
the brief).

Cameryn J. Hinton, Deputy Attorney General,
argued the cause for respondent (Christopher
S. Porrino, Attorney General, attorney;
Melissa Dutton Schaffer, Assistant Attorney
General, of counsel; Ms. Hinton, on the
brief).

PER CURIAM

Robert Ruggiero appeals from a final agency decision of the Department of Community Affairs (DCA or Department) to recoup previously-allocated grant funds from two Sandy-related programs: the Homeowner Resettlement Program and the Renovation, Reconstruction, Elevation and Mitigation Program.  Because we agree with the DCA that Ruggiero did not meet the eligibility requirements for either program, we affirm.

Following Superstorm Sandy, the United States Department of Housing and Urban Development allocated Community Block Grant Disaster Recovery funds to assist property owners who sustained damage from the storm.  <u>Allocations, Common Application, Waivers, and Alternative Requirements for Grantees Receiving Community Development Block Grant (CDBG) Disaster Recovery Funds in Response to Hurricane Sandy</u>, 78 <u>Fed. Req.</u> 14329, 14329-31 (March 5, 2013).  The DCA administers the program in New Jersey.

Through the Homeowner Resettlement Program, the government offered grants to affected homeowners for "any non-construction purpose that assists the homeowner to remain in the county in which they lived at the time of the storm."  Department of Community Affairs, Sandy Recovery Division, <u>Resettlement Program Policy, No. 2.10.35</u>, at 3 (August 2015), <u>http://www.renewjerseystronger.org/wp-content/uploads/2014/09/Resettlement-Program-Policies-and-</u>

Procedures.pdf. In order to receive a grant of up to $10,000, an applicant was required to demonstrate:

> 1. The damaged residence must be located in one of nine most impacted counties: Atlantic, Bergen, Cape May, Essex, Hudson, Middlesex, Monmouth, Ocean, or Union.
>
> 2. At the time of the storm (October 29, 2012), the damaged residence must have been owned and occupied by the applicant as the applicant's primary residence.
>
> 3. The applicant must have registered for FEMA assistance.
>
> 4. The residence must have sustained damage, as a result of Superstorm Sandy, a Full Verified Loss (FVL) of at least $8,000 or one foot or more of water on the first floor (as determined by FEMA, its sub-agencies or affiliates).
>
> [Ibid.]

The Renovation, Reconstruction, Elevation and Mitigation Program's purpose was to assist qualified homeowners to "complete the necessary work to make their homes livable and compliant with flood plain, environmental, and other State and local requirements." Department of Community Affairs, Sandy Recovery Division, Reconstruction, Rehabilitation, Elevation and Mitigation Program (RREM): Policies and Procedures, No. 2.10.36, at 26 (April 2017), http://www.renewjerseystronger.org/wp-content/uploads/2017/04/Reconstruction-Rehabilitation-Elevation-and-Mitigation-RREM-Program-Policies-Procedures.pdf. The

qualifications for this program are nearly identical to those of the Resettlement Program, with the added requirement that a recipient have an adjusted household gross annual income of less than $250,000. Id. at 28.

Ruggiero applied for grants from both programs in June 2013, representing the home he owned in Manahawkin was his primary residence at the time of the storm. Based on his representations, he was awarded a $10,000 Resettlement grant in August 2013 and a $75,000 Reconstruction grant in June 2014. Ruggiero executed a Promissory Note and a Homeowner's Grant Agreement for each grant before the funds were disbursed to him. In March 2015, the DCA advised Ruggiero that a review of his applications revealed the Manahawkin home was not his primary residence at the time of the storm, making him ineligible for the grant funds he had received. The DCA asked Ruggiero to void the checks or return the funds.

Ruggiero timely appealed the DCA's ineligibility determination, and it was transmitted to the Office of Administrative Law (OAL) to be heard as a contested case. At the hearing before the Administrative Law Judge (ALJ), a representative of the Department testified that Ruggiero appeared initially to meet the eligibility criteria for the grant programs. But because Ruggiero had correspondence with

A-3604-15T1

the Department sent to an address in Wayne, the Department undertook a review to verify his primary address.

In the course of that investigation, the Department's witness learned that at the time of the storm, Ruggiero's driver's license listed his address in Wayne, not Manahawkin. Ruggiero's 2012 through 2014 federal tax returns also reflected the Wayne address, as did Ruggiero's 2012 boat registration. He was registered to vote in Essex County. The tax bill for the Manahawkin property was sent to the Wayne address. Information from Ruggiero's property insurer revealed that the Manahawkin property was insured as a primary residence, as did a home equity loan, although no information was provided as to when that loan was made. Ruggiero also received a Homestead Tax Benefit for 2012 for his Manahawkin home, notwithstanding his address of record reflected the Wayne address.

After reviewing that evidence, the Department concluded the Manahawkin address was not Ruggiero's primary residence as of the time of the storm. The witness testified the most significant of the proofs, the driver's license and voter registration, did not reflect the Manahawkin address at the time of the storm. The bank loan was not specific as to time, and the Homestead Benefit account was not enough to outweigh other

evidence that Ruggiero's primary residence was in Wayne at the time of the storm.

Ruggiero testified that he and his wife purchased the Manahawkin house in 1999 to use as their shore house. When his wife retired in 2007, she began residing there for 185 days a year, from April through November when they closed the house for the winter. Ruggiero continued to work in Lyndhurst and live in the couple's mobile home on a leased plot in Wayne during the week. During the months the shore house was open, he would come down on Friday night and return to Wayne on Sunday evening. The couple lived in Wayne from December through April.

Ruggiero testified he used H&R Block software to prepare his taxes and understood from the instructions that he could declare the Manahawkin house his primary residence so long as either he or his wife lived there for the majority of the year. He explained he did all his paperwork and paid all his bills from Wayne because that was where his computer was located.

Although admitting the facts testified to by the DCA witness were correct, Ruggiero testified that he and his wife intended to make the Manahawkin home their primary address since 2007, and believed they had done so. He testified he was unaware of the requirement to change the address on his driver's license, and that he and his wife only did so in 2013 when

A-3604-15T1

someone from the Department suggested it. Mrs. Ruggiero testified the couple was always clear that their mailing address was in Wayne, and would have done things differently had the State told them in the beginning they did not qualify for the grant money.

After hearing the testimony and reviewing the documents submitted by the parties, ALJ Susan Scarola concluded the DCA proved by a preponderance of the credible evidence and in accordance with the Program Guidelines that Ruggiero's primary residence was not in Manahawkin. She found Ruggiero and his wife credible witnesses, and accepted their testimony that he lived in Wayne during the week and spent weekends with her in Manahawkin during the months the house was open.

The ALJ also accepted the DCA's position that the issue before her was not whether Ruggiero had tried to defraud the Program but whether he was eligible for the grants under the Program Guidelines. She acknowledged the Promissory Notes Ruggiero executed provided his representations as to his primary residence were material, had been relied on by the State in determining his eligibility to receive the grant funds, and if intentionally or willfully false or fraudulent would allow the State to declare a default and file an action in the Superior Court to recover the payments, as well as attorney's fees and

costs. She also noted the Promissory Notes further provided that the agreement was governed by New Jersey law, and that any lawsuits of any nature pertaining to the agreements were to be brought in the Superior Court in Mercer County.

The ALJ noted, however, that the DCA did not contend Ruggiero intentionally or willfully made false representations as to his primary residence. Instead, the Department contended Ruggiero would not be eligible for the Program if his primary residence were in Passaic rather than Ocean County. The Department asserted its power to make an administrative determination as to Ruggiero's eligibility, which he could have reviewed in the OAL. The ALJ agreed that eligibility determinations were properly in the agency and "where it is alleged that an unintentional misrepresentation led to a grant payment by mistake," review in the OAL was appropriate.

Reviewing the Guidelines for eligibility under the Resettlement Program, that ALJ noted that as to primary residence, the Guidelines provide:

> 4. Occupancy as Primary Residence.
>
> 4.1. Applicants must have occupied the property as their primary residence on the date of the storm. Second homes, vacation homes and rental properties do not qualify an applicant for a Resettlement Grant.

4.2. Verification of Primary Residence is determined through evaluation of multiple data sources and documents. The preferred verification requires all three of the following:

> Ownership of the property must be verified as described in Section 3.4.

> FEMA records must show that the applicant reported to FEMA that the property was the applicant's primary residence at the time of the storm.

> The applicant must present a New Jersey driver's license or New Jersey non-driver identification card that shows the damaged residence as the address.

4.3. Alternative documentation will be considered if primary residence cannot be confirmed as described in 4.2. Proof of ownership is required. If an applicant is unable to provide a New Jersey driver's license or non-driver identification card or FEMA records do not confirm primary residence, the applicant must present two of the following documents

> Government issued document sent to the damaged residence

> Voter Registration Card

> Insurance documentation indicating that the damaged address is the applicant's primary residence.

Other documentation offered by the applicant may be considered on a case-by-case basis.

[No. 2.10.35, supra, at 6.]

The Guidelines for determining primary-residence eligibility for the Renovation, Reconstruction, Elevation and Mitigation Program are similar and provide as follows:

3.4 Primary Residence

Applicants must have occupied the property as their primary residence on the date of the storm (October 29, 2012). Second homes, vacation homes, and rental properties are not eligible for a RREM grant award.

Verification of primary residence is determined through evaluation of multiple data sources and documents. The preferred verification requires all three of the following:

Ownership of the property must be confirmed as described in Section 3.3.

FEMA records must show that the applicant reported to FEMA that the property was the applicant's primary residence at the time of the storm.

The applicant must present a New Jersey driver's license or New Jersey non-driver identification card dated prior to the date of the storm which shows the damaged residence as the applicant's address.

Alternative documentation will be considered if primary residence cannot be confirmed as above. If an applicant is unable to provide New Jersey identification (driver's license or non-driver identification card) or if FEMA records do not confirm primary residence, the applicant must present the following documents as verification of proof of primary residence:

A-3604-15T1

> Federal tax return document indicating
> damaged residence is primary residence,
> and Voter registration card showing the
> damaged residence.

[No. 2.10.36, supra, at 63.]

Applying the Program Guidelines to the undisputed facts, the ALJ found it clear Ruggiero could not establish his Manahawkin home was his primary residence on the date of the storm. As of October 29, 2012, Ruggiero's driver's license listed his Wayne address; he was registered to vote in Essex County; tax bills for the Manahawkin property were sent to Wayne; and the couple's federal returns carried their Wayne address. Although the ALJ noted Ruggiero's homeowner's carrier insured the Manahawkin property as his primary residence, she noted it is the only real property Ruggiero owned, and thus could not be considered dispositive under the Guidelines.

The ALJ noted that unlike domicile, which "requires presence, intention to remain and abandonment of previous domicile," see In re Settlement of Accounts of Unanue, 255 N.J. Super. 362, 376 (Law Div. 1991), aff'd, 311 N.J. Super. 589 (App. Div.), certif. denied, 157 N.J. 541 (1998), cert. denied sub. nom., Unanue-Casal v. Goya Foods, Inc., 526 U.S. 1051, 119 S. Ct. 1357, 143 L. Ed. 2d 518 (1999), the Sandy Program Guidelines rely on a definition of primary residence that

11

requires "documentary proof, preferably from a government agency, to prove 'primary residence.'" She noted that "nowhere is intention listed as a factor for proving primary residency," and surmised that this is presumably "so that assistance can be provided to those whose primary residency is supported by physical presence on the date of the storm supported by official documentation and other objective evidence, and not only by a subjective intention." The ALJ concluded that "[t]he Resettlement and [Renovation, Reconstruction, Elevation and Mitigation] programs require more than time and intention to prove primary residence; they require documentation, which is absent in this matter." The DCA issued a final decision adopting ALJ Scarola's decision in its entirety.

Ruggiero appeals, arguing the DCA's decision contravenes New Jersey law and lacks fair support in the record, that the OAL did not have jurisdiction to hear the case, the ALJ misapplied the test for primary residency, the grant agreements do not provide for the remedy granted to the DCA and the ALJ did not apply New Jersey law as to when a mistake can provide relief to one party to a contract. We reject those arguments.

We agree with the ALJ that the question presented was one of initial eligibility for receipt of the grant funds in accordance with the terms of the Programs and not breach of the

12                                         A-3604-15T1

grant agreements, making jurisdiction in the agency, and not the Superior Court, appropriate. There is no dispute that Ruggiero had no intent to defraud the Programs by asserting that his Manahawkin shore house was his primary residence. The ALJ found Ruggiero and his wife sincere and credible witnesses, who had no intent to take grant funds to which they were not entitled.

The DCA did not contend Ruggiero breached the grant agreements by making intentional or willful misrepresentations or misapplying the funds. It maintained the agreements were void ab initio because Ruggiero could not qualify for the grants based on the Programs' definition of primary residence. But the fact that Ruggiero's representations were not willfully or intentionally false does not deprive the DCA of the ability to recoup the grant funds.[1] The DCA has an appeals process governing eligibility determinations under both the Homeowner Resettlement and the Renovation, Reconstruction, Elevation and Mitigation Programs. See Department of Community Affairs, DCA

---

[1] It does, however, deprive the Department from recovering its fees and costs for the effort. The remedy of fees and costs is provided only in the grant agreements, which we agree with the DCA were void ab initio on the facts presented. See Department of Community Affairs, Grant Reconciliation Policy, No. 2.10.90, at 3 (April 2016) (providing that "[n]o interest, fees, or charges will be assessed" for any recapture agreement payment plan). Accordingly, we disagree with the ALJ to the extent her opinion could be read to suggest the Department could recover its fees and costs in recouping the funds based on the grant agreements.

<u>Appeals Process</u>, No. 2.10.7, (March 2015),

http://www.renewjerseystronger.org/wp-content/uploads/2014/09/2-10-7-DCA-Appeal-Process-Revised-March-2015.pdf. Given that Ruggiero availed himself of the DCA's established appeals process and does not claim he was deprived of any due process right, we reject his challenge to the agency's jurisdiction to determine and resolve eligibility disputes under the Sandy grant programs pursuant to the Administrative Procedure Act, <u>N.J.S.A.</u> 52:14B-1 to -31.

We likewise reject Ruggiero's arguments the ALJ misapplied the test for primary residency and that her decision lacks fair support in the record. Ruggiero's argument that the ALJ should have applied general New Jersey law as to the meaning of "primary residence" as opposed to the Program Policies and Procedures governing the Grant Programs is without merit. Ruggiero applied for federal grant funds made available only on proof of eligibility in accordance with the terms of the Programs. He cannot substitute another definition of primary residence for the one included in the Programs for which he applied. As the record establishes that Ruggiero lacked a driver's license, voter registration card or a federal tax return document listing the Manahawkin property as his home address as of October 29, 2012, he could not establish that he

occupied the property as his primary residence on the date of the storm in accordance with the Program Guidelines.

Finally, we reject Ruggiero's argument that a mistake by the DCA in determining his eligibility and disbursing the grant funds does not entitle the DCA to recoup the money. The Programs' "Recapture — Write Off Policy" plainly permits recovery of funds incorrectly awarded to an applicant later determined to be ineligible. See Department of Community Affairs, Recapture — Write off Policy, No. 2.10.43, at 1 (September 13, 2013).

We agree with the ALJ that the Resettlement and Renovation, Reconstruction, Elevation and Mitigation Programs "were established by the State under federal guidelines and were designed to efficiently and expeditiously provide financial assistance to those seriously affected by Superstorm Sandy." The obvious need for the Department to provide qualified applicants with the funds they needed to resettle and rebuild their damaged homes as expeditiously as possible would almost certainly result in some mistakes as to an applicant's eligibility for the funds. A more rigorous and searching initial application process would as certainly have delayed necessary funds to deserving applicants. The Programs' "Recapture — Write Off Policy" was designed to recover funds

A-3604-15T1

mistakenly "paid out to applicants who are later determined to be ineligible." Ibid. Nothing in the Sandy Policies or New Jersey law generally prohibits the recovery of federal grant funds from Ruggiero under the circumstances presented.

Because the record is clear Ruggiero did not meet the eligibility requirements for the Resettlement and Renovation, Reconstruction, Elevation and Mitigation Programs, we affirm, essentially for the reasons expressed in ALJ Scarola's thorough and thoughtful initial decision subsequently adopted by the Commissioner of the DCA.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION