# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3684-23

IN THE MATTER OF
REGISTRANT P.C.

_____

Argued October 6, 2025 – Decided February 11, 2026

Before Judges Sabatino, Natali, and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. ML-99-13-0050.

Fletcher C. Duddy, Assistant Public Defender, argued the case for appellant P.C. (Jennifer N. Sellitti, Public Defender, attorney; Fletcher C. Duddy, of counsel and on the briefs; Alexander W. Geisel, Legal Fellow, and Julia Bradley, on the briefs).

Melinda A. Harrigan, Assistant Prosecutor, argued the case for respondent State of New Jersey (Raymond S. Santiago, Monmouth County Prosecutor; Melinda A. Harrigan, of counsel and on the brief).

PER CURIAM

This appeal, which returns to us for a second time, arises from the Law Division's June 11, 2024 order denying registrant P.C.'s as-applied

constitutional challenge to his lifetime registration and notification obligations under Megan's Law, N.J.S.A. 2C:7-2(f) (subsection (f)). P.C. contends the continued imposition of that Megan's Law obligation, after a judicial determination that he is not likely to pose a risk to the public, violates his substantive and procedural due process rights, as well as the doctrine of fundamental fairness enshrined in the New Jersey State Constitution. For the following reasons, we reject all of P.C.'s arguments and affirm the court's order.

I.

On November 22, 1998, a police investigation uncovered that P.C., who was nineteen at the time, had sexually assaulted a fourteen-year-old victim by engaging in sexual intercourse on two occasions. At the time, P.C. had invited the victim and a friend to a local motel, where the group had rented a room for the night and also provided alcohol and marijuana. The police investigation also revealed P.C. admitted that he sexually abused the victim on one instance earlier that month.

The State charged P.C. with two counts of second-degree sexual assault, N.J.S.A 2C:14-2(c)(4), two counts of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a), and one count of a disorderly-persons charge of possession of under fifty grams of marijuana, N.J.S.A. 2C:35-10(a)(4). On

2

March 15, 1999, P.C. pled guilty to a single count of endangering the welfare of a child and the possession of marijuana offense. On September 24, 1999, the court sentenced P.C. to two years of probation and community supervision for life (CSL), N.J.S.A. 2C:43-6.4.[1] The court also required P.C. to comply with the registration and tier classification requirements of Megan's Law under N.J.S.A. 2C:7-2(a) and filed a conforming Judgment of Conviction (JOC) on September 30, 1999.

After his sentencing, on August 24, 2000, the court determined by clear and convincing evidence that P.C. was a Tier II moderate risk offender under N.J.S.A. 2C:7-8(a) to (c). That classification required P.C. to notify "organizations in the community including schools, religious and youth organization." N.J.S.A. 2C:7-8(c)(2).

Approximately a year and a half after his original conviction, police arrested P.C. for failure to register as a convicted sex offender, N.J.S.A. 2C:7-2(a). P.C. pled guilty to charges of failure to register and violation of probation on January 18, 2002. The court sentenced him to a nine-month term of incarceration with each charge running concurrently in accordance with a

---

[1] "A 2003 amendment to N.J.S.A. 2C:43-6.4 replaced all references to 'community supervision for life' with 'parole supervision for life.'" State v. Perez, 220 N.J. 423, 437 (2015).

January 30, 2002 JOC. P.C. completed his sentence and has not committed any further offenses since his release.

A. P.C.'s First Application and Appeal

On April 1, 2020, P.C. filed a motion seeking to be relieved of his Megan's Law requirements pursuant to subsection (f) and his parole supervision for life (PSL) obligations under N.J.S.A. 2C:43-6.4(c). After considering the parties' submissions and arguments, the court issued an oral opinion and entered a June 17, 2020 order that granted P.C.'s motion to be relieved from PSL but denied his application to be relieved from his Megan's Law registration requirements.

The court explained P.C. was eligible to be relieved of his PSL obligation because he had been offense-free for fifteen years since his last conviction and no longer posed a danger to the community. In granting his application, the court noted N.J.S.A. 2C:43-6.4(c) provides such a remedy only upon "clear and convincing evidence that the person has not committed a crime for [fifteen] years since the last conviction or release from incarceration, whichever is later, and the person is not likely to pose a threat to the safety of others if released from parole." The court found P.C. remained conviction-free for over fifteen years following his release from incarceration in 2002 for violating his parole. The court also concluded two reports from an expert in the field of sex offender

A-3684-23

risk assessment and letters from P.C.'s paramour, brother, and parole officer "coupled with the fact that registrant has remained arrest free" constituted clear and convincing evidence that P.C. was "unlikely to pose a risk to the safety of others if terminated from [P]SL."

The court, however, determined P.C. was ineligible to be relieved of his Megan's Law obligations under subsection (f), which provides relief from lifetime obligations if registrants are: (1) offense-free for the fifteen years immediately following their initial conviction for a sexual offense and (2) not a danger to the community. Addressing the first prong, the court rejected P.C.'s argument that the fifteen-year period should commence following his release from incarceration for his failure to register and violation of probation. Relying on In the Matter of H.D., 241 N.J. 412, 423 (2020), the court concluded "[a]ny registrant who commits an offense in the [fifteen] years following his or her conviction for the underlying sex offense, which subjected him or her to Megan's Law requirement, is statutorily ineligible for termination under [subsection (f)]."

P.C. appealed the court's denial of his Megan's Law termination application, and we affirmed. See Matter of P.C., No. A-3863-19 (App. Div. Oct. 19, 2021). In doing so, we specifically rejected P.C.'s argument that the fifteen-year offense-free period imposed by subsection (f) ran after P.C. was

released from incarceration in 2002, despite the term of incarceration being imposed for violating the terms of the probationary sentence. Matter of P.C., (slip op. at 7-9). We adopted a plain reading of subsection (f) that commenced P.C.'s fifteen-year period on September 30, 1999, when his Megan's Law registration requirement was imposed. Ibid. Notably, and as explained further at P.C.'s original June 17, 2020 hearing, he did not bring an as-applied constitutional challenge and inexplicably did not raise such an issue before us in first unsuccessful appeal.[2] P.C. also did not seek Supreme Court review of our 2021 decision.

## B. P.C.'s Second Application and Appeal

For reasons not entirely clear in the record but assumedly in light of our 2021 decision rejecting his statutory interpretation arguments related to subsection (f), P.C. re-filed a motion in October 2023 seeking to be relieved of his Megan's Law requirements as an as-applied constitutional challenge. On April 3, 2024, the court held a second, separate hearing to determine whether

---

[2] At the motion hearing, P.C. clarified that his application proceeded solely on a "statutory analysis" basis. He expressly affirmed he had "not made, at this point, an as-applied constitutional challenge" to his Megan's Law obligations (emphasis added).

A-3684-23

P.C. should be removed from his Megan's Law obligations. As noted, P.C. is a Tier II moderate risk offender and has never applied for a tier reduction.

The court denied P.C.'s application and explained its decision in a written opinion. The court began its analysis with a review of the legislative intent and purpose of Megan's Law and subsection (f). It explained the legislative purpose of Megan's Law is "to aid law enforcement in apprehending sex offenders and to enable the communities to protect themselves from such offenders." It concluded subsection (f) is an "integral" part of Megan's Law and the Legislature's "reasonable determination that assessing the risk of re-offense and informing the public about offenders are effective measures for public safety."

Addressing P.C.'s constitutional arguments, the court held subsection (f) did not violate P.C.'s substantive due process rights because it was "rationally related to a legitimate government purpose." Balancing the factors considered in a substantive due process analysis, the court concluded the State's interest in community safety outweighed P.C.'s privacy interest, as established by Matter of M.H., 475 N.J. Super. 580, 593 (App. Div. 2023), certif. denied, 256 N.J. 195 (2024), and recons. denied, 256 N.J. 444 (2024). The court noted the factual similarities between P.C.'s challenge and the challenge in M.H., as both cases involved Megan's Law registrants who were denied relief from their reporting

obligations because of a failure-to-register offense. Although the registrant in M.H. did not have a judicial determination in the PSL context, the court determined the case was nevertheless binding and persuasive because the legal determination for P.C.'s PSL obligations "does not change the relief that is ultimately being sought" and accepting P.C.'s arguments would afford him "more rights merely because [he] was sentenced to both Megan's Law and [PSL]."

Next, the court held subsection (f) comported with procedural due process because Megan's Law "provides sufficient notice of an offender's registration requirements, and, importantly, sufficient notice of what conditions offenders must meet to terminate those requirements." After balancing the factors outlined in Mathews v. Eldridge, 424 U.S. 319, 335 (1976), the court found subsection (f) "provides clear notice of registration obligations and the consequences that would result if these obligations were violated."

Finally, the court held subsection (f) did not violate the doctrine of fundamental fairness because the Legislature "clearly intended" to procedurally bar sex offenders who may establish they are not a danger to the community but do not satisfy the other fifteen-year time clock condition of subsection (f). Because P.C. did not satisfy subsection (f)'s requirements, the court found the

A-3684-23

doctrine of fundamental fairness, which protects citizens from unjust and arbitrary governmental action, was not violated.

This appeal followed, in which P.C. raises the following arguments:

> I. PERMANENT MEGAN'S LAW REGISTRATION VIOLATES THE STATE CONSTITUTION'S SUBSTANTIVE DUE PROCESS GUARANTEE WHEN A COURT HAS ALREADY FOUND, BY CLEAR AND CONVINCING EVIDENCE, THAT THE REGISTRANT IS NOT LIKELY TO POSE A RISK TO THE PUBLIC.
>
>> A. Megan's Law violates substantive due process when it imposes liberty restrictions that are not designed to actively protect society from sex offender recidivism.
>>
>> B. Continued application of Megan's Law to P.C., who has already been deemed not likely to pose a risk to the public, violates substantive due process because it is not reasonably related to Megan's Law's goal of ensuring public safety.
>>
>> C. Even under the three-factor balancing test applied by the trial court, subsection (f) violates substantive due process as applied to P.C.
>>
>> D. The trial court's reliance on [Matter of M.H.] was misplaced because [M.H.] is factually and legally distinguishable from P.C.'s case.
>
> II. LIFETIME MEGAN'S LAW REGISTRATION, WITHOUT AN OPPORTUNITY TO

9

DEMONSTRATE LACK OF RISK TO THE PUBLIC, VIOLATES THE STATE AND FEDERAL RIGHTS TO PROCEDURAL DUE PROCESS.

A. Megan's Law registration substantially limits P.C.'s enjoyment of his protected interests in privacy, reputation, and general liberty.

B. Subsection (f)'s lifetime registration requirement constitutes an erroneous deprivation of P.C.'s liberty; but this deprivation could be alleviated by affording him an appropriate procedure to seek removal.

C. The State has no legitimate interest in keeping P.C. on Megan's Law, and his removal would only lighten the State's administrative burden, making Megan's Law more effective.

D. The trial court erred in relying on [M.H.] and failing to apply the [Mathews] factors to P.C.'s case.

III. CONTINUED APPLICATION OF MEGAN'S LAW TO P.C. VIOLATES THE DOCTRINE OF FUNDAMENTAL FAIRNESS.

II.

As P.C.'s constitutional challenges constitute issues of law, we review the court's June 11, 2024 order de novo. State v. Pimentel, 461 N.J. Super. 468, 480 (2019). "A trial court's interpretation of the law and the legal consequences that

10

flow from established facts are not entitled to any special deference."

Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)

(citing State v. Brown, 118 N.J. 595, 604 (1990)). We also note a "presumption

of validity attaches to every statute," and "the party challenging the

constitutionality of a statute . . . bears the burden of establishing its

unconstitutionality." State v. Lenihan, 219 N.J. 251, 265-66 (2014). Having

considered defendant's arguments, we conclude his as-applied challenges are

procedurally improper and substantively without merit. We address our

procedural concerns first, followed by a discussion of the relevant substantive

legal principles on each point raised by P.C.

A.

We first address an issue that we raised with the parties at oral arguments

regarding the seriatim nature of this appeal. As noted, P.C. had previously

unsuccessfully filed for relief from his Megan's Law obligations and appealed

that determination, focusing his arguments on the statutory interpretation of

subsection (f). We conclude P.C.'s failure to raise his current as-applied

constitutional arguments in that first appeal was improper.

It is fundamental that litigants are not permitted to pursue successive

appeals in a case that presents issues already resolved by an appellate court in

11

an earlier appeal of that same matter, and when they do, they should not raise any question that could have been presented in the previous appeal, based on the record as it stood at that time. See, e.g., Reier v. State Dep't of Assessments & Tax'n, 397 Md. 2, 21 (2007). We also disfavor piecemeal appellate review. Brundage v. Estate of Carambio, 195 N.J. 575, 579 (2008). "A party is required to raise in a single appeal all of his challenges to the judgment appealed from. The appellate court has no greater tolerance for piecemeal litigation than do the trial courts . . . ." Shimm v. Toys From The Attic, Inc., 375 N.J. Super. 300, 304-05 (App. Div. 2005) (quoting In re Unanue, 311 N.J. Super. 589, 598-99 (App. Div. 1998)). We recognize P.C. is presenting arguments of a constitutional dimension, but those arguments could readily have been advanced as part of the original appeal. We note, at the time P.C. brought his first appeal of the denial of relief from his Megan's Law obligations, he possessed all of the necessary facts and findings for which he now relies, including the key finding that he no longer poses a risk to public safety with respect to his now-relieved PSL obligations.

Avoiding successive appeals is not a hypothetical or academic concern. First, it clearly impacts litigants. The issues raised here could have, and certainly should have, been resolved in the first appeal. Had P.C. done so, he would have

12

received a determination on October 19, 2021, when we issued our plenary opinion, to which P.C. never sought Supreme Court review.

Instead, the trial court conducted a separate proceeding, and a different panel of our court, that last term alone disposed of more than 4,500 appeals and more than 7,400 motions, among other significant responsibilities, was required to consider additional briefing, re-review the record, conduct oral argument, and issue a separate plenary opinion. Although we could dismiss this appeal for P.C.'s failure to address all issues in a single proceeding, we elect not to proceed in that manner to ensure P.C. receives a thorough appellate review, and to ensure that future litigants consider and abide by our comments and concerns.

B.

When addressing P.C.'s substantive arguments, we restate the relevant applicable legal principles, with respect to Megan's Law, subsection (f), and PSL obligations that inform our consideration. "Megan's Law is intended 'to protect the community from the dangers of recidivism by sexual offenders.'" M.H., 475 N.J. Super. at 589 (quoting In re Registrant B.B., 472 N.J. Super. 612, 618 (App. Div. 2022)). In fact, "[t]he expressed purposes of the registration and notification procedures [under Megan's Law] are 'public safety' and 'preventing and promptly resolving incidents involving sexual abuse and missing persons.'"

13

In re Registrant A.A., 461 N.J. Super. 385, 394 (App. Div. 2019) (citing N.J.S.A. 2C:7-1). "The law is remedial and not intended to be punitive." Ibid. (citing Doe v. Poritz, 142 N.J. 1, 12-13 (1995)).

Depending on the type and time of the offense, Megan's Law requires certain sex offenders register with local law enforcement agencies and mandates community notification. In re Registrant T.T., 188 N.J. 321, 327-28 (2006) (citing N.J.S.A. 2C:7-2). The extent of community notification chiefly results from a registrant's designation as a Tier I (low), Tier II (moderate), or Tier III (high) offender. N.J.S.A. 2C:7-8(a), (c)(1) to (3). Tier II offenders, like P.C., must notify "organizations in the community including schools, religious and youth." N.J.S.A. 2C:7-8(c)(2). These tier designations reflect a registrant's risk of re-offense, as determined by a judge assessing various information, including thirteen factors referenced in the registrant risk assessment scale (RRAS). A.A., 461 N.J. Super. at 402. The Guidelines, which contain the RRAS, have been upheld by our Supreme Court. In re Registrant C.A., 146 N.J. 71, 110 (1996).

"[P]SL is a component of the Violent Predator Incapacitation Act, which is also a component of a series of laws, enacted in 1994, commonly referred to as 'Megan's Law.'" Perez, 220 N.J. at 436-37 (quoting State v. Schubert, 212 N.J. 295, 305 (2012)). "[P]SL is designed to protect the public from recidivism

by sexual offenders. To that end, defendants subject to PSL are supervised by the Parole Board and face a variety of conditions beyond those imposed on non-sex-offender parolees." Id. at 437. Our Supreme Court has explained that the imposition of PSL "is punitive rather than remedial at its core." Schubert, 212 N.J. at 305.

As noted, in 2003, the Legislature intended to "clarify" rather than modify portions of the original legislation, including changing all references to CSL with PSL for individuals convicted of certain sexual offenses as well as making "substantial change[s] to the [P]SL post-sentence supervisory scheme." Id. at 314; Perez, 220 N.J. at 437, 440. PSL's "restrictions . . . monitor every aspect of the daily life of an individual convicted of a qualifying sexual offense and expose that individual to parole revocation and incarceration on the violation of one, some, or all conditions." H.D., 241 N.J. at 421 (quoting State v. Hester, 233 N.J. 381, 441 (2018)). The term of PSL is prospective and "follows immediately after the parolee's release from incarceration, if applicable." J.B. v. N.J. State Parole Bd., 433 N.J. Super. 327, 336-37 (App. Div. 2013).

"Registration and community notification under Megan's Law are presumptively lifetime requirements, unless a registrant can satisfy the requirements of subsection (f), rebutting any presumption of dangerousness and

'demonstrating they no longer pose a risk to their community.'" In re S.O., 482 N.J. Super. 265, 293 (App. Div. 2025) (quoting M.H., 475 N.J. Super. at 601). To that end, subsection (f) allows Megan's Law registrants to petition for relief "upon the proof that the person has not committed an offense within [fifteen] years following conviction or release from a correctional facility for any term of imprisonment imposed, whichever is later, and is not likely to pose a threat to the safety of others." N.J.S.A. 2C:7-2(f). The second prong that a person is not likely to pose a threat to the safety of others generally "may be granted upon proof by a preponderance of the evidence." In re J.M., 440 N.J. Super. 107, 116 (Law Div. 2014).

Our Supreme Court has characterized the first prong of subsection (f) as "unambiguous," in that it "plainly refers to the conviction or release that triggers the registration requirement." H.D., 241 N.J. at 421. The Court reasoned that by using similar language, including the term "conviction," in subsection (f) and the registration mandate in subsection (c), "the Legislature tethered the registration relief offered in subsection (f) to the same underlying sex offense that marked the starting point of the registration requirement" and held that "[u]nder the plain language of subsection (f), the fifteen-year period during which an eligible registrant must remain offense-free to qualify for registration

16

relief commences upon his or her conviction or release from confinement for the sex offense that gave rise to his or her registration requirement." Id. at 421, 23. Finally, the Court stated that "the [registration] mandate commences upon conviction of a predicate offense for those 'under supervision in the community on probation.'" Ibid. (quoting N.J.S.A. 2C:7-2(c)(1)).

Meanwhile, a person serving PSL may be released:

> only upon proof by clear and convincing evidence that the person has not committed a crime for [fifteen] years since the last conviction or release from incarceration, whichever is later, and that the person is not likely to pose a threat to the safety of others if released from parole supervision.
>
> [N.J.S.A. 2C:43-6.4(c).]

Unlike subsection (f), the PSL termination provision does not tether the period of incarceration to the offense that resulted in the imposition PSL. "[T]he use of 'last conviction or release from incarceration' . . . is not limited to the sex offense conviction that led to an offender's [C]SL sentence." H.D., 241 N.J. at 422. A defendant must also demonstrate they no longer pose a threat to the safety of others, like subsection (f), but must do so "by the higher burden of 'clear and convincing evidence.'" J.M., 440 N.J. Super. at 116.

A-3684-23

## C.

In Point I-A, P.C. contends his Megan's Law obligations violate his substantive due process rights under the New Jersey Constitution because his restrictions are beyond those "reasonably designed" to protect the public from sex offenders. He asserts that the continued imposition of his Megan's Law responsibilities is not "reasonably related" to public safety because he has already been deemed not a risk to the community when he was relieved from PSL. P.C. maintains our Supreme Court has concluded Megan's Law obligations for registrants who have "been found by a court to no longer pose a risk to public safety . . . serves neither the remedial purpose of Megan's Law nor any other legitimate state purpose."

Next, in Point I-B, P.C. contends the legal determination that he no longer poses a risk with respect to his PSL obligations is critically relevant to his Megan's Law requirements because the two statutory schemes share a "singular purpose" of public safety. P.C. maintains, as he has already met the burden of proof for PSL removal, he has also met the burden for the purposes of Megan's Law to establish he no longer presents a public danger. He further argues, unlike PSL, Megan's Law violates substantive due process because "it does not allow

18

registrants, who can demonstrate their harmlessness, to petition for removal from the registry."

In Point I-C, P.C. identifies "the several ways his status as a Megan's Law registrant negatively impacts his life" and notes New Jersey courts "have long recognized that Megan's Law registration implicates" privacy, reputation, and general liberty interests. He contends his Tier II status precludes him from attending adult education classes and traveling interstate with his children, causing him "a huge source of anxiety, paranoia, and embarrassment." P.C. asserts he no longer poses a public risk, and there remains no sound constitutional basis for the continued harmful intrusion.

Finally, in Point I-D, P.C. maintains, unlike Doe, 142 N.J at 89, and other precedent addressing Megan's Law lifetime obligations, here, a court has expressly found that he no longer is a danger to the community. P.C. argues this legal determination for his PSL obligations "is consonant with Doe's central holding: that Megan's Law is only constitutional insofar as its 'incursion on [a registrant's] interests is necessary for the protection of the public.'" (citing 142 N.J. at 90-91).

Under the New Jersey Constitution, equal protection[3] and due process rights derive from the same language. State v. Pimentel, 461 N.J. Super. at 490. Although Article I does not contain the terms "equal protection" or "due process," the New Jersey Constitution does provide that all "persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness." N.J. Const. art. I, ¶ 1. "It is well settled that the expansive language of that provision is the source for both of those fundamental [state] constitutional guarantees." Pimentel, 461 N.J. Super. at 490 (alteration in original) (quoting Sojourner A. v. N.J. Dep't of Human Servs., 177 N.J. 318, 332 (2003)).

"The guarantee of substantive due process requires that a statute reasonably relate to a legitimate legislative purpose and not impose arbitrary or discriminatory burdens on a class of individuals." State in Int. of C.K., 233 N.J. 44, 73 (2018). "Although all laws are presumed to be constitutional, no law can survive scrutiny under Article I, Paragraph 1 unless it has a rational basis in furthering some state interest." Ibid. Our courts consider "the nature of the

---

[3] Before us, P.C. has not raised an equal protection claim.

affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction." Doe, 142 N.J. at 94.

Our Supreme Court has already "concluded the registration and community notification provisions of Megan's Law did not violate substantive due process under the New Jersey Constitution, concluding the State's 'interest in disclosure substantially outweigh[ed] the interest in nondisclosure.'" M.H., 475 N.J. Super. at 594 (quoting Doe, 142 N.J. at 90). Against the registrant's marginal privacy interests in the information being disclosed, the Doe Court determined the State's "interest in protecting the public is legitimate and substantial[,]" and the incursion on a registrant's privacy "is necessary for the protection of the public, as the means chosen are narrowly tailored to that interest." Doe, 142 N.J. at 90. The Court also considered "the degree and scope of disclosure is carefully calibrated to the need for public disclosure: the risk of re[-]offense." Id. at 89.

New Jersey courts have also upheld the constitutionality of the "lifelong registration and community notification requirements on registrants who fail to satisfy subsection (f)." M.H., 475 N.J. Super. at 595; see also Matter of J.R., 478 N.J. Super. 1, 6 n.3 (App. Div. 2024). Heavily relying on Doe and its analysis of Megan's Law's design, M.H. "acknowledge[d] Doe did not

specifically address within its analysis whether either Megan's Law's presumption its requirements will apply indefinitely or the termination requirements of subsection (f) violate a defendant's substantive due process rights." M.H., 475 N.J. Super. at 594. Nevertheless, the M.H. court explained "[s]ubsection (f) was part and parcel of the Legislature's reasonable conclusion that 'the risk of re[-]offense can be fairly measured, and the knowledge of the presence of offenders provides increased defense against them.'" Ibid. (quoting In re Registrant G.H., 455 N.J. Super. 515, 532-33 (App. Div. 2018)) (internal quotation marks omitted).[4]

Against these principles, we reject P.C.'s substantive due process challenge to the Megan's Law registration and community notification requirements substantially for the reasons expressed in Doe and as explained in

---

[4] As acknowledged by P.C., we note M.H. raised many of the same as-applied constitutional arguments before us, similarly premised on the contention that "he pose[d] no greater risk of committing a sex offense than other other member of the general public." M.H., 475 N.J. Super. at 585. Although M.H. did not have a judicial determination for the purposes of relief from PSL, the trial court in his case heard extensive testimony and reports from three experts demonstrating he no longer posed a public risk. Ibid. Nevertheless, M.H.'s lifetime reporting requirements under Megan's Law were upheld because he failed to remain offense-free for fifteen years after his offense. Ibid. Further, the court concluded his status as a Tier II registrant "undermined" his contention that he no longer posed a public risk, the other prong necessary for relief under subsection (f). Id. at 595.

22

<u>M.H.</u>  We conclude the continued imposition of P.C.'s Megan's Law obligations does not violate substantive due process because the enforcement of subsection (f) to deny P.C. relief reflects the Legislature's decision on how to best protect the public from sexual offenders.  We are satisfied he does not meet the criteria for relief under subsection (f) based on his conviction for failing to register within fifteen years of the underlying sexual offense.  "Subsection (f) was part of the original Megan's Law registration and notification requirements, which [the Supreme Court] declared constitutional in <u>Doe</u>."  <u>C.K.</u>, 233 N.J. at 64 (citing <u>Doe</u>, 142 N.J. at 12-13).

To the extent that the conditions of relief are different for Megan's Law and PSL, we conclude those differences reflect the Legislature's attempt to quantify dangerousness and protect the public while balancing the intrusion on an offender's privacy.  PSL having less stringent conditions for relief but much more demanding reporting and monitoring obligations than Megan's Law reflects the Legislature's balance of the State's interest for safety with the privacy intrusion for offenders.  Thus, it is when a registrant both has been offense-free for fifteen years and no longer poses a risk to the public's safety that "the registration requirements no longer serve a remedial purpose."  <u>C.K.</u>, 233 N.J. at 63.  Simply put, PSL and Megan's Law are different statutes with

23

different goals, justifying not only different criteria for relief but also explaining the statutes' different reporting requirements and burdens of proof for relief, and thus, we find no merit to P.C.'s claim that the court's PSL finding mandates relief from his Megan's Law obligations.

Additionally, P.C.'s contention he no longer poses a risk to his community "is undermined by his status as a Tier II registrant." M.H., 475 N.J. Super. at 595. Doe concluded "the evidence proffered by the registrant with respect to his risk of re-offense was relevant 'only to his ultimate [t]ier classification,' as opposed to his obligations under the statute in the first instance." Ibid. (citing Doe, 142 N.J. at 89). Like M.H., P.C. "has never availed himself of the procedures provided for under the statute to reduce his burden as a Megan's Law registrant by seeking Tier I designation." Ibid.

D.

Next, in Point II, P.C. contends the statute violates his procedural due process rights because, despite his legal determination, he is left without a procedure to remove himself from the Megan's Law registry. P.C. asserts his "lifetime Megan's Law registration erroneously and substantially limits his enjoyment of his privacy, reputation, and liberty interests." P.C. argues Megan's Law registration at any tier implicates "general liberty interests, including

24

freedom from restraint and associative rights."  Although P.C. has not applied for a classification reduction to Tier I, he maintains a reduction "would not alleviate the harms done" such as the emotional toll and effects on employment.

Further, P.C. contends "the balance of interests weighs in the favor of allowing registrant to demonstrate his lack of dangerousness to a [c]ourt."  He asserts his Megan's Law obligations "serve no government interest adequate to counterbalance these liberty limitations, which are erroneously imposed" because he "poses a vanishingly low risk of sex offense recidivism."  He asserts providing a procedure for him to remove himself from the registry "would not impose a burden on the Government, since this procedure already exists in the form of the Megan's Law termination hearing."  Taken together, he maintains withholding the opportunity for P.C. to be removed from his Megan's Law requirements violates his procedural due process rights.  We again disagree with all of P.C.'s arguments.

"In examining a procedural due process claim, we first assess whether a liberty or property interest has been interfered with by the State, and second, whether the procedures attendant upon that deprivation are constitutionally sufficient."  Doe, 142 N.J. at 99.  "The minimum requirements of due process . . . are notice and the opportunity to be heard."  Id. at 106.

To determine what procedural protections are required in a given case, New Jersey courts have adopted the <u>Mathews</u> factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and finally, the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
>
> [<u>Id.</u> at 106-07 (quoting <u>Zinermon v. Burch</u>, 494 U.S. 113, 127 (1990)).]

Our Supreme Court has applied these factors and upheld the registration and community notification requirements of Megan's Law with respect to procedural due process but held "a hearing is required prior to notification under Tiers [II] and [III]." <u>Id.</u> at 107. "Megan's Law provide[s registrants'] clear notice of [their] registration obligations and the consequences that would result if [they] violate[] those obligations." <u>M.H.</u>, 475 N.J. Super. at 600. "[S]ubsection (f) allows a registrant to seek relief from those requirements fifteen years after [the underlying sexual offense], provided he has been offense-free and is 'not likely to pose a threat to the safety of others.'" <u>C.K.</u>, 233 N.J. at 47-48 (internal citation omitted).

26

With these principles in mind, we are further convinced enforcing subsection (f) with respect to P.C. does not violate his procedural due process rights because it provides him with a clear path for relief if he met the two necessary criteria, which P.C. did, and does, not. P.C. does not dispute he has already taken advantage of the process subsection (f) affords, and only after a hearing, and appeal, was he denied relief because he does not meet that criteria. In addition to applying for relief under subsection (f), we note P.C. can also apply for a tier reduction, a procedure which P.C. has not yet utilized, despite its potential to reduce P.C.'s reporting responsibilities to only "law enforcement agencies" in Tier I. N.J.S.A. 2C:7-8(c)(1).

E.

Finally, in Point III, P.C. asserts lifetime registration and notification under Megan's Law run afoul of the fundamental fairness doctrine of the New Jersey Constitution. P.C. contends forcing him to remain on the Megan's Law registry despite already demonstrating his lack of dangerousness is a "common-sense denial of fair treatment." P.C. asserts the "arbitrary, inexplicable" conclusion to deny him relief from Megan's Law violates his fundamental fairness.

27

After oral arguments, P.C. filed a letter brief, citing <u>A.A.</u>, 461 N.J. Super. at 394. P.C. contends <u>A.A.</u> represents an example where our court relied on the doctrine of fundamental fairness, "specifically in the context of a Megan's Law case," to hold "a state action . . . ran afoul of the New Jersey Constitution."

New Jersey's doctrine of fundamental fairness:

> serves to protect citizens generally against unjust and arbitrary governmental action, and specifically against governmental procedures that tend to operate arbitrarily. [It] serves, depending on the context, as an augmentation of existing constitutional protections or as an independent source of protection against state action. This unique doctrine is not appropriately applied in every case but only in those instances where the interests involved are especially compelling[.]
>
> [<u>Doe</u>, 142 N.J. at 108 (quoting <u>State v. Ramseur</u>, 106 N.J. 123, 377 (1987)) (internal quotation marks omitted).]

In <u>Doe</u>, our Supreme Court held fundamental fairness required registrants under Megan's Law have "procedural protections that will ensure that his classification, and its related consequences, are tailored to his particular characteristics and are not the product of arbitrary action." 142 N.J. at 109.

We conclude subsection (f), as applied to P.C., does not offend fundamental fairness because its application to P.C. is not arbitrary action but rather represents a reasonable interpretation of subsection (f)'s plain meaning.

A-3684-23

Further, we are satisfied the different criteria for relief under PSL and Megan's Law does not violate fundamental fairness based on those statutes' different goals and different reporting responsibilities that reflect varying levels of privacy intrusion on offenders' lives and the conditions.

We are unpersuaded A.A. compels a different result. As P.C. acknowledges, the issue in A.A. concerned protections "afforded to individuals who committed crimes outside New Jersey when law enforcement allege that those crimes are 'similar to' Megan's Law offenses . . . ." 461 N.J. Super. at 390. We are satisfied that case bears no factual similarity to the case before us and no legal relevance to our analysis of subsection (f), the constitutionality of which has been robustly affirmed. See M.H., 475 N.J. Super. at 589.

To the extent we have not addressed any of the parties' remaining arguments, it is because we have determined they lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3684-23